FILED

2013 Aug-06  PM 01:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**ROBERT WILLIS and**
**JOAN WILLIS**

   **Plaintiffs,**

**v.**            **CV 4:10-1933-RBP**

**HOMESITE INSURANCE COMPANY**
**OF THE MIDWEST and**
**GMAC MORTGAGE LLC,**

   **Defendants.**

## MEMORANDUM OPINION

This cause comes on to be heard on plaintiffs' Motion in Limine filed on July 3, 2013;[1] and on Plaintiffs' Motion to Deem Mortgage Satisfied filed on July 3, 2013 both of which the court will deny; and on Motion to Dismiss filed by defendant Homesite Insurance Company (Homesite) on May 28, 2013.[2]

### FACTS

The dates relative to a bankruptcy, a fire, the filing of this action, amendments to the bankruptcy petition, discharge in bankruptcy, etc. are as follows:

---

[1] At a recorded hearing on July 22, 2013, the plaintiffs acknowledged that, as to this motion,  the only ground they are insisting upon is the exclusion of the opinion of James Allison.  The court denied that motion on the record and hereby ratifies that ruling.  See *Schultz v. Akzo Nobel Paints, LLC*, 2013 WL 3215674 (7th  Cir. June 26, 2013).

[2] The plaintiffs have referred to a "Motion for Summary Judgment" filed by Homesite.  See "Submissions in Opposition to Homesite's Motion for Summary Judgment" filed by plaintiffs on July 22, 2013.  The court does not find such a motion.  Apparently, the plaintiffs have reference to the Motion to Dismiss.  Since some evidence has been submitted it is likely appropriate to consider it as a motion for summary judgment.  The court may tangentially be addressing a Motion for Summary Judgment on Denial of Claim filed by plaintiffs on May 15, 2013.

1.  4-6-09  Both plaintiffs filed a petition in bankruptcy which "surrendered" the Alabama house with mortgage, removing automatic stay, saying that the house value and mortgage balance were the same.  The excess based on insured replacement value was not disclosed.  Personal property value was not fully disclosed.  The original petition values the total personal property at $11,489.  Plaintiffs list their Michigan real property valued at $230,000 and secured by a mortgage of $353,920.

2.  6-5-09 Alabama house burns

3.  7-1-09  Chapter 13 plan confirmed

4.  6-14-10  This action filed

5.  7-9-12  Amended bankruptcy schedule filed.  Denies any pending litigation.

6.  4-2-13  Bankruptcy court discharges debts

7.  5-10-13 Trustee final report filed, stating discharge of $286,396.49 in unsecured debts

8.  5-28-13  Homesite files Motion to Dismiss this action

9.  5-30-13  Plaintiffs' attorney in this case suggests reopening of bankruptcy case in order to attempt to avoid judicial estoppel.  Michigan attorneys say not necessary.  This came after judicial estoppel had been mentioned by Homesite attorneys to the attorney for plaintiffs in this action.

If one is keeping score, the following should be considered:

1.  The unsecured creditors have lost $286,396.49.

2.  The plaintiffs' "Itemization of Damages"[3] in this case include (a) loss of home (remember the "surrender.") - $300,000.00 (b) loss of personal property - $150,000.00 (c) loss of use - $60,000.00.[4]

In addition to the listed cash amounts, the plaintiffs claim unliquidated damages for

debris removal, interest after loss, and mental distress.  The plaintiffs have claimed that the

mortgage on the Alabama house should be satisfied.  In summary, the plaintiffs have claimed that

---

[3]  Filed 5/17/13.

[4]  Personal property loss claimed  far exceeds any amount stated in bankruptcy schedules.

they are due some $510,000.00 plus land value, plus other unliquidated damages and that the unsecured creditors get nothing. Even recognizing the exaggeration of the itemization, the amounts argued for on July 22, 2013 suggest a continued misrepresentation.

The court will not "lard" up this opinion, but will "skinny" down to the essence.  See *Castillo v. State of Florida*, 2013 WL 3790270 at *1 (11th Cir. July 22, 2013).[5]  The essence relates to matters connected with the plaintiffs' bankruptcy.  There may be other defenses of Homesite not fully developed by the court.

At the recorded hearing on July, 22, 2013, the following statements, *inter alia*, were undisputed:

> Court:              "Is that [bankruptcy] still pending?"
> Plaintiffs' Atty:   "No, it's been closed out and satisfied [sic]."
>
> Plaintiffs' Atty:   "As to claims in this action. 'Equity' in house that burned, $80,000.00. Personal property $102,000 to $150,000.  Additional living expense $60,000.00.  Total $242,000  to $290,000, plus house and land free of mortgage."[6]

The house that was burned was listed in the initial bankruptcy petition which was filed on April 6, 2009, but was "surrendered"on the basis that it had no value above the mortgage balance.  In effect that meant that there was no stay regarding the mortgage.  At the time of the fire, the plaintiffs had "surrendered" the house, with no value listed for unsecured creditors.

> Court:              "Was there a value put on the house at the time a bankruptcy petition was filed?"
>
> Plaintiffs' Atty:   "I believe it was about $220,000 which was the amount owed on it."

---

[5]  The court has enough paper to have started a "paper drive" during World War II.

[6]  At various places in the transcript there are references to a total claim of $500,000, that the insured replacement value of the house was $300,000.00, etc.

The plaintiffs claim that, at the time of the fire, there was an insured replacement value of

$300,000.  That was not reported before the discharge.

| | |
|---|---|
| Court: | You [are] saying when the original petition was filed, there was nothing said about the personal property [in Alabama] [which you now say was worth at least $102,000.]" |
| Homesite's Atty: | "The ...schedule that was filed ... showed a value of $231,769... basically asserting that there was zero value with the plaintiffs in the house ... ." |
| Court: | "Do you agree?" |
| Plaintiffs' Atty: | "He's correct." |
| Homesite's Atty: | "[T]he actual discharged unsecured debt ... was $286,396.49." |
| Plaintiffs' Atty: | "I agree." |
| Homesite Atty: | "They amended their schedule after we told them about the [judicial estoppel] issue ... to list any property that they were claiming in this case." |

Plaintiffs' present attorney, (Allenstein), acknowledged that the only amendment which

was filed was after he got into the case to file this action.  He acknowledged that, "Well, there's

some gray areas here."  It is somewhat disingenuous to say that the plaintiffs and their attorneys

would think that they did not have to list Alabama personal property when they did list Alabama

real property.  As the following cited case says, the plaintiffs are charged with the faults of their

attorneys.  *See Barger v. City of Cartersville*, 348 F.3d 1289, 1295 (11th Cir. 2003).  Plaintiffs'

attorney also agreed that the amended schedule was filed two years after this action was filed and

that the amended schedule did not mention the claim(s) made in this action.

| | |
|---|---|
| Homesite's Atty: | [When the amended schedule was filed they] denied the existence of a lawsuit ... ." |
| Court: | "Do you agree with that?" |

Plaintiffs Atty:          "Yes, sir."[7]

The plaintiffs' attorney acknowledged that if judicial estoppel applies, this action should be dismissed.

Plaintiffs' Atty:          "The claim [in this case] accrued the day of the fire... ."

The Homesite attorney argued that the plaintiffs had $286,000 in unsecured claims written off by not disclosing a $500,000 lawsuit including asking that the mortgage be satisfied.

JUDICIAL
ESTOPPEL

The following are cases which the parties have cited in support of and in opposition to the judicial estoppel defense:

Judicial Estoppel Authority Cited by Parties

Cited by Defendant Homesite to Support Judicial Estoppel:

**1. *Burnes v. Pemco Aeroplex, Inc.*, 291 F. 3d 1282 (11th Cir. 2002).**

Judicial estoppel is an equitable doctrine invoked at a court's discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 1815, 149 L. Ed. 2d 968 (2001) (internal citations and quotations omitted). Under this doctrine, a party is precluded from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. Judicial estoppel is an equitable concept intended to prevent the perversion of the judicial process." 18 James Wm. Moore 7 et al., *Moore's Federal Practice* § 134.30, p. 134-62 (3d ed. 2000). The purpose of the doctrine, "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749-50, 121 S. Ct. at 1814 (internal citations and quotations omitted). This Circuit has explained that, "judicial estoppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of

---

[7] The Homesite attorney argued that in the initial complaint in this case plaintiffs claimed $250,000 loss of personal property.

justice by inconsistent pleadings." *American Nat'l Bank of Jacksonville v. Federal Dep. Ins. Corp.*, 710 F.2d 1528, 1536 (11th Cir. 1983) (internal citation omitted).

*Burnes*, 291 F.3d at 1285.

> "'First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.'"

*Id*. at 1285 (quoting *Salomon Smith Barney, Inc. v. Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir. 2001).

> Courts typically consider: (1) whether the present position is "clearly inconsistent" with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party.

*Id.*

> A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court. The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change. Full and honest disclosure in a bankruptcy case is "crucial to the effective functioning of the federal bankruptcy system." For example, creditors rely on a debtor's disclosure statements in determining whether to contest or consent to no asset discharge. Bankruptcy courts also rely on the accuracy of the disclosure statements when considering whether to approve a no asset discharge. Accordingly, "the importance of full and honest disclosure cannot be overstated."

*Id*. at 1286 (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996)). (Internal citations omitted).

> In an attempt to remedy the situation, Billups argues that he should now be allowed to re-open his bankruptcy case to amend his filings and include his lawsuit against Pemco. We disagree. The success of our bankruptcy laws requires a debtor's full and honest disclosure. Allowing Billups to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets.

*Id.* at 1288.

**2.** ***Barger v. City of Cartersville*, 348 F. 3d 1289 (11th Cir. 2003).**

Nevertheless, Barger argues that several facts suggest that she did not engage in any intentional manipulation. She contends that her disclosure of the employment discrimination claim to her attorney and the bankruptcy trustee, as well as the fact that she sought and was granted permission to re-open her bankruptcy proceedings, all militate against a finding of intentional manipulation. The Court disagrees.

Although it is undisputed that Barger's attorney failed to list Barger's discrimination suit on the schedule of assets despite the fact that Barger specifically told him about the suit, the attorney's omission is no panacea. As the Supreme Court stated in *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34, 82 S.Ct. 1386, 1386, 8 L.Ed.2d 734 (1962), "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34, 82 S.Ct. 1386, 1386, 8 L.Ed.2d 734(1962). "[I]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant." *Id*. at 634 n. 10, 82 S.Ct. 1386 n. 10 (citations omitted).[8]

. . .

The failure to comply with the Bankruptcy Code's disclosure duty is "inadvertent" only when a party either lacks knowledge of the undisclosed claim or has no motive for their concealment. *See In re Coastal Plains*, 179 F.3d 197, 210 (5th Cir.1999).

*Barger*, 348 F. 3d at 1295.

In light of *Burnes* and *DeLeon*, it is difficult to argue that Barger should not be judicially estopped from asserting the discrimination claims she failed to disclose in her bankruptcy petition. Barger appeared to gain an advantage when she failed to list her discrimination claims on her schedule of assets. Omitting the discrimination claims from the schedule of assets appeared to benefit her because, by omitting the claims, she could keep any proceeds for herself and not have them become part of the bankruptcy estate. Thus, Barger's knowledge of her discrimination claims and motive to conceal them are sufficient evidence from which to infer her intentional manipulation. *See Burnes* at 1287.

The fact that Barger informed the trustee about her discrimination suit during the

---

[8]  Note that the conduct of attorneys cannot avoid judicial estoppel.

creditor's meeting does not aid her cause. When the bankruptcy trustee asked Barger for the monetary value of the lawsuit, she informed him that she only sought reinstatement of her previous position with the City of Cartersville. Barger did not tell the trustee that she was also seeking backpay, liquidated damages, compensatory damages, and punitive damages. She did not inform the trustee about these additional damages even though she added them to her prayer for relief a mere two days before the creditors meeting. Thus, it seems clear that Barger deceived the trustee. The bankruptcy court reasoned away Barger's conduct by concluding that it was ultimately the trustee's responsibility to investigate the lawsuit as property of the estate. The Court is not persuaded by the bankruptcy court's reasoning. The foremost responsibility in this matter was for Barger to fully disclose her assets. She did not satisfy her duty. Instead, she dissembled to the trustee and indicated that her discrimination claim had no monetary value. As such, the trustee can hardly be faulted for not further investigating Barger's discrimination suit.

*Id.* at 1296.

**3. *De Leon v. Comcar Indus., Inc.*, 321 F. 3d 1289, 1291-1292 (11th Cir. 2003).**

While Chapter 13 does allow amendments to be made to add after-acquired assets and Chapter 7 does not, De Leon did not make such an amendment even after he filed suit. Despite De Leon's continuing duty to disclose all assets or potential assets to the bankruptcy court, he did not amend his bankruptcy documents to add a potential employment discrimination claim until after Comcar relied on it in its motion to dismiss the case.

The success of our bankruptcy laws requires a debtor's full honest disclosure. Allowing [plaintiff] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. *Burnes,* 291 F.3d at 1288.

**4. *Martin v. Cash Exp., Inc.*, 60 So. 3d 236**

The Court of Civil Appeals recently summarized the current status of the doctrine of judicial estoppel in Alabama:

"In 2003, our Supreme Court followed the United States Supreme Court's decision in *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), regarding the applicability of the doctrine of judicial estoppel. *See Ex parte First Alabama Bank*, 883 So.2d 1236, 1246 (Ala.2003) (overruling *Porter v. Jolly*, 564 So.2d 434 (Ala.1990), and cases consistent with *Porter* regarding the requirements to show judicial estoppel). In *Ex parte First Alabama Bank*, the Alabama Supreme Court held that for judicial estoppel to apply:

> " '(1) "a party's later position must be 'clearly inconsistent' with its earlier position"; (2) the party must have been successful in the prior proceeding so that "judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or second court was misled' "; and (3) the party seeking to assert an inconsistent position must "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." '

> " *Id*. at 1244 (citations omitted)."

*Lewis v. First Tuskegee Bank*, 964 So.2d 36, 40–41 (Ala.Civ.App.2007).

*Martin*, 60 So. 3d at 244-245.

> "In essence, the *First Alabama Bank* decision abolished the requirements of showing privity or reliance by the party seeking to show judicial estoppel."

*Id*. at 245.

> "Although both Luna and Bertrand involved Chapter 7 bankruptcies, the same rule applies to Chapter 13 bankruptcies. As the Eleventh Circuit explained in the case of *De Leon v. Comcar Ind., Inc*., 321 F.3d 1289, 1291 (11th Cir.2003):

>> " '*De Leon* attempts to distinguish [between] a debtor who file[s] for bankruptcy under Chapter 7, which allows for the complete discharge of debts and ... bankruptcy under Chapter 13 through which ... debts [are] discounted and repaid. However, a financial motive to secret assets exists under Chapter 13 as well as under Chapter 7 because the hiding of assets affects the amount to be discounted and repaid.... We also conclude that any distinction between the types of bankruptcies available is not sufficient enough to affect the applicability of judicial estoppel because the need for complete and honest disclosure exists in all types of bankruptcies. Accordingly, we hold that the rule established in *Burnes [ v. Pemco Aeroplex, Inc*., 291 F.3d 1282 (11th Cir.2002) ], that judicial estoppel bars a plaintiff from asserting claims previously undisclosed to the bankruptcy court where the plaintiff both knew about the undisclosed claims and had a motive to conceal them from the bankruptcy court, applies equally in Chapter 13 bankruptcy cases.'

> "The *De Leon* court also points out the futility of an attempt for the debtor to reopen his bankruptcy case to amend his schedule of assets once an opposing party has filed a motion to dismiss the lawsuit.

>> " 'While Chapter 13 does allow amendments to be made to add after-acquired assets and Chapter 7 does not, De Leon did not make such an amendment even

9

after he filed suit. Despite [De Leon]'s continuing duty to disclose all assets or potential assets to the bankruptcy court, he did not amend his bankruptcy documents to add a potential employment discrimination claim until after *Comcar* relied on it in its motion to dismiss the case.

" 'The success of our bankruptcy laws requires a debtor's full, honest disclosure. Allowing [the plaintiff] to back-up, re-open the bankruptcy case and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them.'

"[ *De Leon* ], 321 F.3d at 1291–1292.

*Id.* at 246-247.

We also find the reasoning in *De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289 (11th Cir.2003) persuasive; particularly persuasive is its statement that "a financial motive to secret assets exists under Chapter 13 as well as under Chapter 7 because the hiding of assets affects the amount to be discounted and repaid." 321 F.3d at 1291 (emphasis added).

*Id.* at 247.

Like the appellant in *Luna v. Dominion Bank of Middle Tennessee, Inc.*, 631 So.2d 917 (Ala.1993), the Martins argue that they did not know that they had an action against Cash Express when they filed their petition in bankruptcy. The Martins, however, had a continuing duty to disclose all potential assets to the bankruptcy court. *De Leon*, 321 F.3d at 1292.

*Id.* at 248.

**5. *Ex parte First Alabama Bank*, 883 So. 2d 1236 (Ala. 2003).**

Rather than resolving this case by limiting the holding in *Jinright* to those cases where the earlier action is a Chapter 13 bankruptcy proceeding, we opt for the broader approach of reevaluating the propriety of limitations upon the availability of the doctrine of judicial estoppel found in some of our earlier cases. We previously quoted from *Jinright* what was there described as "essentials to the establishment of an estoppel." Those requirements were found in *Porter v. Jolly*, 564 So.2d 434, 437 (Ala.1990), where this Court observed that "there are a number of limitations that should be placed upon this 'doctrine of inconsistent positions,' which is in the nature of an estoppel." The Bank tries to distinguish *Porter* on the ground that *Porter* applies to equitable estoppel only. However, it clearly addresses inconsistent positions in judicial proceedings. Nevertheless, the requirements of privity and reliance set forth in *Porter* focus upon the relationship

between the parties to the prior litigation as opposed to the relationship between the litigant and the judicial system.

Since *Porter*, our Court has dealt with the inconsistency of positions in judicial proceedings without attention to the strict requirements set forth in Porter for the availability of the doctrine of judicial estoppel.

*Ex Parte First Ala. Bank*, 883 So. 2d at 1242-1243.

Reliance and privity are components that fit easily under the heading of equitable estoppel, but should not be essential elements of the doctrine of judicial estoppel. See, e.g., *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir.2002).

*Id*. at 1243.

"First, reliance is not an element of judicial estoppel. Since equitable estoppel is designed 'to ensure fairness in the relationship between parties,' reliance is an essential element of this type of estoppel. Without reliance, there would be no injury to a party and hence, no unfairness in the relationship. Judicial estoppel, on the other hand, strives to preserve the sanctity of the oath and protect the integrity of the judicial process. Reliance is not a factor because any inconsistent statement violates the sanctity of the oath and injures the integrity of the judicial process, whether or not some party relied on the first statement. The inconsistency itself damages 'public confidence in the purity ... of judicial proceedings.' Thus, for judicial estoppel to remain an independent doctrine, capable of achieving its intended objective, reliance should not be required." 80 Nw. U.L.Rev. at 1249-50 (footnotes omitted; emphasis added).

*Id*. at 1244.

The United States Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), recently observed that " '[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle' " and then identified several factors as informative in determining the applicability of the doctrine of judicial estoppel. 532 U.S. at 750-51, 121 S.Ct. 1808 (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir.1982)). The Court held that for judicial estoppel to apply (1) "a party's later position must be 'clearly inconsistent' with its earlier position"; (2) the party must have been successful in the prior proceeding so that "judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or second court was misled' " (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir.1982)); and (3) the party seeking to assert an *1245 inconsistent position must "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." 532 U.S. at 750-51, 121 S.Ct. 1808. No requirement of a showing of privity or reliance appears in the foregoing statement of factors to consider in determining the applicability of the doctrine

of judicial estoppel.

*Id*. at 1244-1245.

### 6. *White v. Wyndham Vacation Ownership, Inc.*, 617 F. 3d 472 (6th Cir. 2010).

Second, on October 3, 2008, White filed an "Application to Employ Counsel" with the bankruptcy court for the harassment claim. This filing did provide some notice to the bankruptcy court that White had a harassment claim. However, her application did not identify whether she was the plaintiff or the defendant in the lawsuit (although the fact that her lawyer was representing her on a contingency fee suggests that she was the plaintiff), the amount of the lawsuit, the facts giving rise to the lawsuit, or even when the actions giving rise to the lawsuit took place. It also did not indicate that the harassment claim had been omitted from her initial filings and it did not appear to trigger any request for additional information from the bankruptcy court or the trustee. Furthermore, it did not cause White to update her inaccurate filing statements. Consequently, the application did not adequately inform the court, the trustee, or White's creditors of the initial omission and it does not show an absence of bad faith or that White's omission resulted from mistake or inadvertence.

*White*, 617 F. 3d at 481.

We will not consider favorably the fact that White updated her initial filings after the motion to dismiss was filed. To do so would encourage gamesmanship, *since White only fixed her filings after the opposing party pointed out that those filings were inaccurate. See Barger*, 348 F.3d at 1297 ("Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them.") (citation omitted).  (Emphasis added).

*Id.*[9]

### 7. 11 U.S.C. § 521.

(a) The debtor shall - -
    (1) file - -
        (A) a list of creditors; and
        (B) unless the court orders otherwise - -
            (i) a schedule of assets and liabilities; . . .

### 8. 11 U.S.C. § 541.

---

[9] *Also see Kimberlin v. Dollar General Corp.*, 2013 U.S. App. LEXIS 5797, *7 (6th Cir. 2013).

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located an by whomever held:

. . .

(7) Any interest in property that the estate acquires after the commencement of the case. . . .

**Cited by Plaintiffs Against Judicial Estoppel:**

**1.** *Jinright v. Paulk*, **758 So. 2d 553 (Ala. 2000) (abrogated by** *Ex part First Alabama Bank*, **883 So. 2d 1236 (Ala. 2003)).**

The doctrine of judicial estoppel "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system[,] while equitable estoppel focuses on the relationship between the parties to the prior litigation." *Selma Foundry & Supply Co. v. Peoples Bank & Trust Co.*, 598 So.2d 844, 846 (Ala.1992) (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir.), cert. denied, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988)). The doctrine is applied to uphold the integrity of the judicial system. *Chandler v. Samford University*, 35 F.Supp.2d 861 (N.D.Ala.1999). However, this Court has recognized a number of limitations upon the rule against asserting inconsistent positions in judicial proceedings.

*Jinright*, 758 So. 2d at 555.

The Jinrights filed a bankruptcy proceeding under Chapter 13, under which debtors may repay their creditors while maintaining their assets in accordance with a plan developed by the debtors with the approval of the bankruptcy court and their creditors. Those plans may be amended at any time, and last for up to five years. The debtors are not discharged until they have fulfilled the terms of their plans. The Jinrights have not yet received a discharge in bankruptcy.

*Id*. at 556.

The Jinrights' case is more on point with *Selma Foundry*, a case in which the plaintiff/debtor omitted its claim against the defendant from its initial bankruptcy disclosures, but filed amended disclosure statements approximately three months later; there was no indication that the bankruptcy court or the defendant took any action in reliance on the initial disclosure statements. This Court refused to apply the doctrine of judicial estoppel. 598 So.2d at 847.

The purpose of the doctrine of judicial estoppel will not be accomplished, but, rather, will be frustrated if defendants are allowed to use this doctrine to their advantage at the expense of plaintiffs with valid claims. Paulk and Option Builders will receive a windfall

if they are allowed to escape any potential liability to the Jinrights on the basis that the Jinrights failed to list their potential claim in their initial bankruptcy proceeding, even though the bankruptcy court and the trustee have now been fully informed about the lawsuit and the Jinrights' potential claim.

*Id*. at 557.

We agree with the *Griner* court that a debtor's mere knowledge or awareness of a potential claim and the debtor's failure to include the claim as an asset on the bankruptcy schedules filed with the court, without more, are not sufficient to invoke the application of the doctrine of judicial estoppel. . . .

We conclude that the doctrine of judicial estoppel should not be applied in this case  so as to prevent the Jinrights from maintaining their action against Paulk and Option Builders. Although the Jinrights' initial failure in their bankruptcy proceedings to list their claim against Paulk and Option Builders as an asset was inconsistent with the claims they made in their lawsuit against Paulk and Option Builders, nothing before us indicates that the Jinrights will benefit from that omission, nor has there been any showing that Paulk and Option Builders have been prejudiced by the omission. According to the record before us, the Jinrights have pending in the bankruptcy court a motion to amend their Chapter 13 plan so as to pay zero to their unsecured creditors. This case is like Griner-the application of the doctrine of judicial estoppel would punish the Jinrights and their creditors and would produce a windfall for Paulk and Option Builders. On the other hand, if the Jinrights are allowed to maintain their claim against Paulk and Option Builders, then any recovery obtained by the Jinrights presumably will be available for distribution to their creditors through their bankruptcy plan.

*Id*. at 559-560.

## 2. *Battle v. Alpha Chem. & Paper Co.*, 770 So. 2d 626 (Ala. Civ. App. 2000).

In reversing the summary judgment in favor of the defendants in *Jinright*, the Alabama Supreme Court first noted the applicability of certain general principles governing the doctrine of judicial estoppel under Alabama law:

"The doctrine of judicial estoppel 'applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system[,] while equitable estoppel focuses on the relationship between the parties to the prior litigation.' *Selma Foundry & Supply Co. v. Peoples Bank & Trust Co.*, 598 So.2d 844, 846 (Ala.1992) (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir.), cert. denied, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988)). The doctrine is applied to uphold the integrity of the judicial system. *Chandler v. Samford University*, 35 F.Supp.2d 861 (N.D.Ala.1999).

14

However, this Court has recognized a number of limitations upon the rule against asserting inconsistent positions in judicial proceedings.

" ' "[T]he following have been enumerated as essentials to the establishment of an estoppel under the rule that a position taken in an earlier action estops the one taking such position from assuming an inconsistent position in a later action: (1) The inconsistent position first asserted must have been successfully maintained; (2) a judgment must have been rendered; (3) the positions must be clearly inconsistent; (4) the parties and questions must be the same; (5) the party claiming estoppel must have been misled and have changed his position; and (6) it must appear unjust to one party to permit the other to change." '

"28 Am.Jur.2d § 70 Estoppel and Waiver (1966) (as quoted with approval in *Porter v. Jolly*, 564 So.2d 434, 437 (Ala.1990)). Thus, a party may not claim the benefit of the doctrine of judicial estoppel unless the party can demonstrate that the party against whom the estoppel is sought procured a judgment in its favor as a result of the inconsistent position taken in the prior proceeding. Moreover, the party claiming the estoppel must have been misled by the conduct of the party against whom the estoppel is sought, and consequently changed its position to its prejudice. *Id."*

*Jinright,* 758 So.2d at 555 (emphasis added).

*Battle*, 770 So. 2d at 629-630.

*Jinright* represents a marked change in the law of judicial estoppel in Alabama. No longer will a plaintiff's mere failure to list a potential prepetition cause of action in his or her bankruptcy filings amount to an automatic procedural default as to that claim. Rather, a court evaluating a judicial-estoppel defense must now look to a number of additional factors in concluding whether that defense warrants the entry of a judgment as a matter of law. Among these are (1) the chapter of the Bankruptcy Code under which the plaintiff-debtor has sought bankruptcy protection, (2) whether the plaintiff-debtor has been discharged in bankruptcy, (3) whether the plaintiff-debtor has amended his or her filings in the bankruptcy court to reflect the existence of the omitted cause of action, and (4) whether the defendant has been prejudiced by the omission of the claim in the bankruptcy court.

*Id.* at 633.

### 3. *Jones v. Lanthrip*, 765 So. 2d 682, 687 (Ala. Civ. App. 2000).

"We agree with the *Griner* court that a debtor's mere knowledge or awareness of a potential claim and the debtor's failure to include the claim as an asset on the bankruptcy schedules filed with the court, without more, are not sufficient to invoke the application

15

of the doctrine of judicial estoppel."

**4. *Nollie v. Jim Wilson & Assocs., Inc.*, 781 So. 2d 962 (Ala. Civ. App. 2000).**

" 'In a chapter 13 case, unless otherwise specifically provided by the [debtor's] plan, a debtor remains in possession of all of his or her assets pre- and postconfirmation. 11 U.S.C. § 1306(b). This is in contrast to chapter 7 cases where the trustee "collects (takes control of) and reduces to money" all nonexempt assets....' " *Jinright*, 758 So.2d at 556, quoting *In re Griner*, 240 B.R. at 436.

*Nollie*, 781 So. 2d at 966.

Our supreme court held in *Jinright* that mere knowledge of a potential lawsuit, without more, is insufficient to invoke the doctrine of judicial estoppel and that a party seeking to apply the doctrine must prove that it was prejudiced by the debtor's failure to disclose the potential lawsuit as an asset. We conclude that Wilson has failed to show in any manner how it was prejudiced by Nollie's failure to disclose the potential lawsuit as an asset.

*Id*. at 967-968.

**5. *Ex parte First Ala. Bank*, 883 So. 2d 1236, 1243 (Ala. 2003).**

Reliance and privity are components that fit easily under the heading of equitable estoppel, but should not be essential elements of the doctrine of judicial estoppel. *See, e.g., Burnes v. Pemco Aeroplex, Inc*., 291 F.3d 1282, 1286 (11th Cir.2002) ("The doctrine of judicial estoppel protects the integrity of the judicial system, not the litigants; therefore, numerous courts have concluded, and we agree, that '[w]hile privity and/or detrimental reliance are often present in judicial estoppel cases, they are not required.' " (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 360 (3d Cir.1996)));

Plaintiffs have also cited *Martin v. Cash Express, Inc.*, 60 So.3d 236 (Ala. 2010).  The

claims being made here suggest the motive.

It should be noted that cases cited by the plaintiffs preceded *Ex Parte First Ala. Bank*,

883 So.2d 1236 (Ala. 2003) and are Ala. Civ. App. cases.[10]

The court concludes that this action is barred by the doctrine of judicial estoppel based on

---

[10]  Interestingly, plaintiffs also cite *Ex parte First Ala. Bank*.

various non-disclosures in the bankruptcy proceedings.  The Homesite's motion will be granted and this action dismissed.

   This the 6th day of August, 2013.

          **ROBERT B. PROPST**
       **SENIOR UNITED STATES DISTRICT JUDGE**